Michael BESS; and Timothy Poe, Appellants,

v.

BRACKEN COUNTY FISCAL COURT, Appellee.

No. 2005–CA–000541–MR.

Court of Appeals of Kentucky.

Dec. 1, 2006.

---

5. See KRS 431.005(1)(c) and (d).

Linda M. Keeton, Elizabethtown, KY, for appellants.

Edward J. Rudd, Brooksville, KY, for appellee.

Before ACREE, SCHRODER, and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

By statute, local governing bodies may pass ordinances regulating dogs so long as the provisions are not inconsistent with KRS Chapter 258. The primary issue we must resolve is whether a Bracken County ordinance which bans the possession of pit bull terriers is inconsistent with that chapter. We hold that it is not and therefore affirm the judgment of the Bracken Circuit Court.

In 2004, the Bracken County Fiscal Court passed an ordinance which dealt generally with animal control and included provisions banning pit bull terriers.

Bracken County, Ky. Ordinance §§ 53.001–53.99 (Sept. 27, 2004). Under the ordinance, a "pit bull terrier" is defined as any dog which is a registered American Staffordshire Terrier, Staffordshire Bull Terrier or American Pit Bull Terrier, or one which conforms to the standards of such a dog, or one which has the predominant physical characteristics of such a dog. Ordinance § 53.90. The fiscal court determined by ordinance that pit bull terriers "have inherently vicious and dangerous propensities, and are potentially hazardous and unreasonably dangerous to the health, safety, and welfare" of the citizens of Bracken County, and it declared that the ownership and keeping of such dogs in the county is "a public nuisance." Ordinance §§ 53.91(A) and (B). Further, the "ownership, location, maintenance, keeping, harboring, or use" of pit bull terriers was made punishable by a fine of up to $500, and/or incarceration of up to 90 days, and any animals meeting the definition of pit bull terriers were made subject to forfeiture and euthanasia. Ordinance §§ 53.91(C) and 53.92.

Following its passage, appellants Michael Bess and Timothy Poe instituted this action challenging the ordinance and seeking a temporary injunction against its enforcement. The trial court denied the motion and dismissed the complaint, holding that under its "police powers" the fiscal court was authorized to regulate or ban pit bull terriers, and to take them without compensation. This appeal followed.

On appeal, Bess and Poe argue (1) that the ordinance is inconsistent with KRS Chapter 258 and specifically with the definition of "vicious dog" contained in KRS 258.095; (2) that it impermissibly allows the forfeiture of property without compensation; (3) that it denies dog owners procedural due process; and (4) that it impedes the right of nonresident owners of

pit bull terriers to travel through Bracken County.

■ With respect to the constitutionality of measures related to dogs, courts have universally recognized the right of state legislatures to exercise their police power to regulate dog ownership. *See, e.g., Nicchia v. People of State of New York*, 254 U.S. 228, 230, 41 S.Ct. 103, 104, 65 L.Ed. 235 (1920) (dogs "may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right"); *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 704, 17 S.Ct. 693, 695, 41 L.Ed. 1169 (1897) (dogs are "subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens"). Kentucky decisions have been no exception. In *McGlone v. Womack*, 129 Ky. 274, 284, 111 S.W. 688, 690 (1908), the court held that

> the regulation of dogs is within the police power of the state, and that it is competent for the Legislature to prohibit the keeping of dogs entirely, or, if it is necessary for the public welfare, any other regulation may be adopted which to the Legislature may seem most expedient for the promotion of that end.

The rationale behind these cases is based on the nature of dogs, specifically " 'their liability to break through all discipline and act according to their original savage nature[.]' " *Shadoan v. Barnett*, 217 Ky. 205, 207, 289 S.W. 204, 205 (Ky.1926) (quoting 1 R.C.L. 11, 12, ¶ 56). Thus, although dogs are recognized as personal property, they are "regarded and recognized by the law as only qualified property, with the right in the Legislature under the police power to prescribe regulations for [their] continued existence by either enlarging or abridging those recognized by the common law." *Id.*, 217 Ky. at 211, 289 S.W. at 206.

While no reported Kentucky decision has dealt with the right or authority of either the General Assembly or a local governing body to ban any particular breed of dog, specifically pit bulls, courts in other jurisdictions have upheld challenges to such laws which have been brought on a number of bases. *See, e.g., American Dog Owners Ass'n, Inc. v. Dade County, Fla.*, 728 F.Supp. 1533 (S.D.Fla. 1989) (ordinance regulating pit bulls was not void for vagueness); *Colorado Dog Fanciers, Inc. v. City and County of Denver*, 820 P.2d 644 (Colo.1991) (local ordinance was not impermissibly vague and did not violate guarantees of substantive due process, equal protection, or taking without compensation); *Garcia v. Village of Tijeras*, 108 N.M. 116, 767 P.2d 355 (Ct.App.1988) (local ordinance was not void for vagueness and did not abridge dog owners' rights to substantive due process, equal protection, and procedural due process); *American Dog Owners Ass'n v. City of Yakima*, 113 Wash.2d 213, 777 P.2d 1046 (1989) (local ordinance was not void for vagueness); *but see City of Toledo v. Tellings*, 2006 WL 513946 (Ohio App.2006), *disc. appeal accepted*, 110 Ohio St.3d 1437, 852 N.E.2d 186 (2006) (statute which labeled pit bulls as vicious violated procedural and substantive due process, as well as equal protection, since no rational basis existed to single out pit bulls as inherently dangerous). *See generally* Russell G. Donaldson, Annotation, *Validity and Construction of Statute, Ordinance, or Regulation Applying to Specific Dog Breeds, Such as "Pit Bulls" or "Bull Terriers,"* 80 A.L.R.4th 70 (1990).

### Conflict with KRS Chapter 258

■ Bess and Poe argue that by defining all pit bull terriers as being "inherently vicious," the ordinance is inconsistent with

KRS 258.095(7), which defines a "vicious dog" as being "any individual dog declared by a court to be a vicious dog." They also argue that the ordinance conflicts with KRS 258.235, under which the district court possesses jurisdiction to hear complaints concerning dogs that have attacked people. Upon finding that the person charged is the owner or keeper of the dog, and that the dog viciously and without cause attacked a human while off the owner's or keeper's premises, the court shall order that the dog be securely confined or destroyed. KRS 258.235(5)(a). In addition, the court may impose the penalties authorized by KRS 258.990(3)(b), which include the imposition of a fine of $50 to $200, and/or confinement in the county jail for 10 to 60 days.

KRS 258.365 provides in part:

Nothing in this chapter shall be construed to prohibit or limit the right of any governing body to pass or enforce any ordinance with respect to the regulation of dogs or other animals, the provisions of which are not inconsistent with the provisions of this chapter.

In reviewing the two methods for dealing with vicious dogs, the General Assembly has created a "dog specific" procedure involving a general process which could apply to any dog, once that dog has attacked a person off the premises of the owner or keeper. By contrast, the Bracken County Fiscal Court has enacted an ordinance which is "breed specific," declaring all members of that breed to be inherently vicious, and banning their presence in the county. The statutory procedure is reactive, whereas the ordinance procedure is proactive, but both enactments seek to reduce the risk of humans being injured by dogs. In our view, the proactive ordinance is supplemental to, rather than inconsistent with, the statute since it does not limit the statute's application but instead provides a more comprehensive plan of protection.

## Forfeiture without Compensation

As noted above, Kentucky law recognizes that dogs can be property. KRS 258.245; *Duff v. Louisville & N.R. Co.*, 219 Ky. 238, 240, 292 S.W. 814, 815 (1927); *Commonwealth v. Hazelwood*, 84 Ky. 681, 684, 2 S.W. 489, 490 (1887). However, the property right in dogs is "subject to regulation under the police power[.]" *Duff*, 219 Ky. at 240, 292 S.W. at 815. A local governing body " 'has a broad discretion in the enactment of laws to preserve and promote the health, morals, security and general welfare of its citizens.' " *City of Louisville v. Thompson*, 339 S.W.2d 869, 872 (Ky.1960) (quoting *Shaeffler v. City of Park Hills*, 279 S.W.2d 21, 22 (Ky.1955)). The primary limitation on such an ordinance is that it must have " 'substantial relation to a legitimate object in the suppression of the conditions which the city authorities deem detrimental to the public good.' " *Id.*

As to the right to compensation, the Kentucky Supreme Court has emphasized the difference between the seizure of property under the police power, and the taking of property for public use:

Whereas Sections 13 and 242 of the Kentucky Constitution require just compensation when private property is taken for public use, "a valid exercise of the police power resulting in expense or loss of property is not a taking of property without due process of law or without just compensation." *City of Shively v. Illinois Cent. R.R. Co.*, Ky., 349 S.W.2d 682, 685 (1961). *Accord Newport Municipal Housing Commission v. Turner Advertising Inc.*, Ky., 334 S.W.2d 767, 769 (1960).

The police power differs from the Commonwealth's inherent authority to

condemn private property in that this "power authorizes regulation and destruction of property without compensation if it promotes the general welfare of the citizens." *V.T.C. Lines, Inc. v. City of Harlan*, Ky., 313 S.W.2d 573, 575 (1957). *See also* 16A Am.Jur.2d, Constitutional Law § 365 (describing differences between eminent domain and the police power in a takings context). *Commonwealth v. R.J. Corman R.R./Memphis Line*, 116 S.W.3d 488, 493 (Ky.2003); *see also Thompson*, 339 S.W.2d at 872.

■ If reasonable minds could differ, the fiscal court's ordinance regarding pit bull terriers will stand, since " 'the legislature, not the judiciary, is the main guardian of the public needs to be served[.]' " *Thompson*, 339 S.W.2d at 872 (quoting *Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954)). Here, the determination by the Bracken County Fiscal Court that pit bull terriers have "inherently vicious and dangerous propensities" was certainly not unreasonable, given the evidence to support that finding. *See, e.g., Colorado Dog Fanciers*, 820 P.2d at 652 (summarizing trial court's findings as to pit bulls); *Garcia*, 108 N.M. at 120–21, 767 P.2d at 359–60 (noting evidence regarding the breed's inherent characteristics of strength, viciousness, aggression, and unpredictability). Therefore, a ban of the breed was a legitimate exercise of the fiscal court's police power. Because the forfeiture and destruction of such dogs is pursuant to a valid exercise of the police power, no compensation is required or due to the dogs' owners.

### Procedural Due Process

■ Next, Bess and Poe argue that the Bracken County Ordinance denied them one of the basic elements of procedural due process, namely, a meaningful oppor-

tunity to be heard as to the viciousness or dangerousness of their dogs.

■ We note that a statute carries a strong presumption that it is constitutional. *Wynn v. Ibold, Inc.*, 969 S.W.2d 695 (Ky.1998). When the constitutionality of a statute is challenged, it is the appellate court's responsibility to "draw all reasonable inferences and implications from the act as a whole and thereby if possible sustain the validity of the act." *Graham v. Mills*, 694 S.W.2d 698, 701 (Ky.1985). This rule of construction is also applicable to local ordinances. *See, e.g., City of Erlanger v. KSL Realty Corp.*, 819 S.W.2d 707, 709 (Ky.1991). The burden of establishing the unconstitutionality of a statute rests upon the party challenging it. *Stephens v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 624, 626 (Ky.1995).

The ordinance on its face states that "[a]nimals meeting the definition ... [of a pit bull terrier] shall be forfeited and euthanized unless otherwise ordered by the Court. Said animals shall be held pending disposition by the District Court." Ordinance § 53.92. Clearly, the ordinance contemplates a hearing before the Bracken District Court with notice to the owner or keeper prior to the disposition of any impounded dog. As the owner or keeper therefore would have the opportunity to appear before the court, and to present evidence and defenses to the action, procedural due process would be afforded.

### Right to Travel

Bess and Poe next argue that the ordinance impermissibly infringes on a person's right to travel as guaranteed both by the equal Protection Clause of the 14th Amendment, and by the Privileges and Immunities Clause of Article IV of the United States Constitution. However, they fail to cite any authority for their proposition on appeal that traveling with a

pet "occupies a position fundamental to the concept of a federal union." In fact, although Bess and Poe cite to *Ellis v. Anderson,* 901 S.W.2d 46 (Ky.App.1995), the court noted therein that " 'not all state action that affects interstate movement 'penalizes' the right to travel.' " *Id.* at 47 (quoting *Miller v. Stauffer Chemical Co.,* 99 Idaho 299, 302, 581 P.2d 345, 348 (1978)).

In any event, the ordinance in question equally affects all owners or keepers of pit bull terriers, regardless of whether they are residents or nonresidents. The constitutional right to travel does not require that when traveling to another jurisdiction, a person must be given benefits which are superior to those enjoyed by the jurisdiction's own residents simply because the traveler enjoyed those benefits in another place. *Califano v. Gautier Torres,* 435 U.S. 1, 4, 98 S.Ct. 906, 908, 55 L.Ed.2d 65 (1978). Moreover, the right to travel does not destroy the independent power of each state to enact statutes which are uniformly applicable to all of its residents. *See* 16A C.J.S. *Constitutional Law* § 690 (2006). Furthermore, the right to travel is not contravened by a state's enactment and enforcement of reasonable regulations to promote safety. *Id.* We therefore conclude that the ordinance clearly does not infringe on the constitutional right to travel.

The judgment of the Bracken Circuit Court is affirmed.

ALL CONCUR.